# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re<br><br>MARINE ENVIRONMENTAL REMEDIATION GROUP, LLC, and MER GROUP PUERTO RICO LLC,<br><br>  Debtors. | Chapter 11<br><br>Case No. 19-18994 (VFP)<br>Jointly Administered |
| MARINE ENVIRONMENTAL REMEDIATION GROUP, LLC, and MER GROUP PUERTO RICO LLC,<br><br>  Plaintiffs,<br><br>    v.<br><br>STARR INDEMNITY & LIABILITY COMPANY,<br><br>  Defendant. | Adv. Pro. No. 20-01141 (VFP) |

**STARR INDEMNITY & LIABILITY COMPANY'S BRIEF IN SUPPORT OF
CROSS-MOTION FOR RELIEF FROM STAY TO CONTINUE
INSURANCE COVERAGE LITIGATION PENDING
IN THE UNITED STATES COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

Philip W. Allogramento III, Esq.
Robert K. Scheinbaum, Esq.
Anthony P. D'Elia, Esq.
CONNELL FOLEY LLP
56 Livingston Avenue
Roseland, New Jersey 07068
973-535-0500
- and -
Terry L. Stoltz, Esq.
Guerric S. Russell, Esq.
NICOLETTI HORNIG & SWEENEY
505 Main Street, Suite 106
Hackensack, New Jersey 07601
201-343-0970
Attorneys for Starr Indemnity & Liability Company

5445772-1

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 4

STATEMENT OF FACTS ........................................................................................................ 5

LEGAL ARGUMENT ............................................................................................................. 10

    POINT I

    STARR SHOULD BE GRANTED RELIEF FROM STAY FOR THE PARTIES TO CONTINUE THE INSURANCE COVERAGE LITIGATION................................................................................................. 10

CONCLUSION ........................................................................................................................ 14

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 15375 Memorial Corp.*,
  382 B.R. 652 (Bankr. D. Del. 2008) ................................................................................8

*Baldino v. Wilson (In re Wilson)*,
  116 F.3d 87 (3d Cir. 1997) ..............................................................................................8

*Best v. Galloway (In re Best)*,
  417 B.R. 259 (Bankr. E.D. Pa. 2009) ..............................................................................8

*Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington,
  Karcher, Salmond, Ronan & Rainone, P.A.)*,
  194 B.R. 750 (D.N.J. 1996) .............................................................................................8

*Clauson v. Mixson (In re Mixson)*,
  33 F.3d 4 (4th Cir. 1994) .................................................................................................7

*In re Hollister Constr. Servs., LLC*,
  2020 Bankr. LEXIS 677 (Bankr. D.N.J. March 13, 2020) (Kaplan, J.) ..........................8

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic
  Handling Sys., LLC)*,
  304 B.R. 111 (Bankr. D.N.J. 2004) (Steckroth, J.) .................................................. 9, 10

*In re Schaffer*,
  597 B.R. 777 (Bankr. E.D. Pa. 2019) ..............................................................................8

*In re Telegroup, Inc.*,
  237 B.R. 87 (Bankr. D.N.J. 1999) ...................................................................................7

*In re The SCO Group Inc.*,
  395 B.R. 852 (Bankr. D. Del. 2007) ................................................................................8

*In re Todd Shipyards Corp.*,
  92 B.R. 600 (Bankr. D.N.J. 1988) ...................................................................................8

**Statutes**

Bankruptcy Code § 362(d)(1) ...............................................................................................7

## PRELIMINARY STATEMENT

Starr Indemnity & Liability Company ("Starr"), respectfully submits this brief in support of its Cross-Motion for relief from stay to continue insurance coverage litigation between Starr and Debtor, Marine Environmental Remediation Group, LLC ("MER" and collectively with MER Group Puerto Rico LLC ("MER Puerto Rico"), the "Debtors") pending in the United States District Court for the Southern District of New York (the "SDNY").

As set forth in Starr's Brief in Support of Motion to Convert the Case to Chapter 7 or, Alternatively, Dismiss the Case and Order that the Funds Securing Starr's Lien Claim be Escrowed, filed April 27, 2020 [Case No, 19-18994 (VFP), Docket No. 334-1], a central issue in this case is the valuation and determination on the merits of Starr's and the Debtors' claims against each other, which are the subject of insurance coverage litigation pending in the SDNY captioned *Starr Indemnity & Liability Co. v. Marine Environmental Remediation Group, LLC*, Case No. 1:17-cv-09881 (LGS) (the "Insurance Coverage Litigation"). The Debtors have claimed that they will use money recovered from MER's claims against Starr to fund their reorganization, and Starr claims that the Debtor owes Starr money on account of the insurance claim and the Ship Mortgage.

Accordingly, if the case is not dismissed, Starr should be granted relief from the automatic stay for the parties to continue the Insurance Coverage Litigation in the Southern District of New York. As set forth below, discovery has been completed in that litigation and the parties were poised to argue motions for summary judgment which could resolve and determine liability and damages on the claims. None of the claims in the Insurance Coverage Litigation involve bankruptcy law issues, and the case is near resolution by summary judgment or trial. Granting relief from stay to allow the Insurance Coverage Litigation to continue would enable a speedy and efficient resolution of a central issue in case, i.e., the valuations of the claims of Starr

5445772-1

and MER against one another. Granting relief from stay would also allow the SDNY – a tribunal specialized in hearing such insurance and maritime laws issues, and which presided over the matter for over 15 months including a fulsome discovery process, to determine the non-bankruptcy issues of fact and law that are involved in the Insurance Coverage Litigation.

**STATEMENT OF FACTS**

1.  As set forth in Starr's Memorandum of Law in Opposition to Debtors' Objection to and Motion to Expunge Starr's Secured Claim [Adv. Pro. 20-1141 (VFP), Docket No. 7] ("Lien Objection Opp."), the Chapter 11 petition in this matter was filed on May 1, 2019 (the "Petition Date"), the day MER's opposition papers were due to Starr's motion for partial summary judgment – seeking judgment on claims for a declaration that there was no coverage and that the insurance policy was null and void *ab initio* – in the insurance coverage dispute pending in the Southern District of New York. The events preceding the bankruptcy filing are set forth below.

2.  Starr issued Pollution Policy No. MASILNY00047816 to MER, which provided certain pollution liability insurance for MER's Lone Star vessel, with a policy period from June 30, 2016 to June 30, 2017 (the "Policy").

3.  According to Chapter 6, Paragraph (b) of the Policy,

    > Should there be any dispute arising out of or in in any way concerning this Policy or the coverage provided by the Company to the Insured hereunder which results in any lawsuit or other legal action against the Company by the insured; such lawsuit or legal action shall be brought by the Insured in the United States District Court for the Southern District of New York, and the Company consents to the jurisdiction of that Court for all such lawsuits or legal actions.

4.  On April 30, 2017, MER's Lone Star vessel was discovered to have sunk, discharging approximately 1,800 gallons of waste oil, after MER had left the vessel unattended

5445772-1

2

in an unseaworthy condition. *See* Starr's Insurance Coverage Complaint filed on December 18, 2017 (Adv. Pro. No. 20-1114 (VFP), Docket No. 7-2), ¶¶ 11-12, p. 3.

5. Due to the sinking of the Lone Star, MER was required to incur expenses pursuant to orders of the United States Coast Guard and the government of Puerto Rico to remove the sunken barge; however, MER claimed it did not have the financial resources to undertake the required responses. *See id.*, ¶¶ 14-20, pp. 3-6.

6. The Pollution Policy at issue was a reimbursement policy only and did not require Starr to pay its inured for covered expenses and liabilities that MER did not first pay itself. Although Starr had concerns regarding coverage under the Policy, and Starr's investigation into the claim was continuing under a full reservation of rights, Starr offered to pay certain expenses that would be incurred by MER if MER were to post a bond to secure repayment of these outlays in the event the claim was ultimately denied once a full investigation into the incident was completed.

7. By email dated August 23, 2017 (Adv. Pro. No. 20-1114 (VFP), Docket No. 7-3), MER's in-house counsel, Lawrence Kahn, did not dispute Starr's request for countersecurity under the circumstances and requested that, rather than MER posting a bond, Starr take a mortgage on the Seven Polaris vessel in consideration for Starr making payment on the disputed claim for the Lone Star vessel.

8. Based upon this offer by MER, Starr agreed to issue a Letter of Undertaking to Resolve guaranteeing amounts due under a BIMCO wreckage contract executed by MER to recover and remove the sunken barge; agreed to make payments to MER for labor and equipment used in the wreck removal activities; and agreed to retain a dive contractor to perform an underwater survey required by the United States Coast Guard, subject to Starr's receipt of the

ship mortgage suggested by MER. *See* Insurance Coverage Complaint (Adv. Pro. No. 20-1114 (VFP), Docket No. 7-2), ¶¶14-21, pp. 3-6.

9. Pursuant to a First Preferred Ship Mortgage dated September 12, 2017 (the "Ship Mortgage"), MER granted Starr a Mortgage on the Seven Polaris in the amount of $3,000,000. *See* Adv. Pro. No. 20-1114 (VFP), Docket No. 7-4.

10. Upon receipt and recording of the Ship Mortgage, Starr did in fact outlay the sum of approximately $2.5 million to pay for wreck removal, survey, and cleanup expenses related to the Lone Star sinking, which sum excludes costs of investigating and defending against the claim.

11. After the wreck of the Lone Star was removed and Starr's investigation into the claim was complete, on December 18, 2017, Starr filed a Complaint (the "Insurance Coverage Complaint") in the SDNY commencing the Insurance Coverage Litigation. Pursuant to the Insurance Coverage Complaint, Starr denied MER's claim and sought a declaration:

- That there was no coverage under the terms of the Policy because the Lone Star was unseaworthy at the time she sank and that her sinking was the result of such unseaworthiness, and that prior to the sinking of the Lone Star, MER did not exercise due diligence in maintaining the barge in a seaworthy condition (Adv. Pro. No. 20-1114 (VFP), Docket No. 7-2), First Cause of Action, ¶¶ 22-29, pp. 6-8);

- That the Policy was null and void *ab initio*, and therefore no coverage need be provided, because MER misrepresented in its application for insurance that its demolition process would maintain the watertight integrity, trim and stability of the Lone Star, and that the barge would

5445772-1

4

remain in a condition capable of being towed and remain afloat (*id.*, Second Cause of Action, ¶¶ 30-32, p. 8);

- That coverage for any part of the claim was excluded by the willful misconduct of the insured by its failure to block the sea chest intake and other through holes in the hull, undertake routine periodic inspections of the barge as she was laying alongside the pier, and/or to periodically pump out any ingress of water into the hull, all of which were necessary to prevent her from losing what little freeboard she had (*id.*, Third Cause of Action, ¶¶ 33-36, p. 8-9);

- That there is no coverage under the Policy for the pollution mitigation expenses incurred by MER because MER refused to allow Starr's surveyors full access to inspect the salvaged sections of the barge and take samples in violation of the Policy's "Cooperation" provision (*id.*, Fourth Cause of Action, ¶¶ 37-41, pp. 9-10);

- That there is no coverage under the Policy for the pollution mitigation expenses incurred by MER because MER violated its obligation to mitigate and remove the wreck after the response moved to a passive recovery maintenance phase (*id.*, Fifth Cause of Action, ¶¶ 42-46, p. 10); and

- That, because there is no coverage for MER's claim under the Policy, Starr is entitled to recover from MER all costs and expenses that were incurred and/or paid by Starr related to the sinking of the Lone Star (*id.*, Sixth Cause of Action, ¶¶ 47-48, pp. 10-11).

12. On April 3, 2019, following the close of voluminous discovery in the insurance coverage litigation, Starr filed a motion for partial summary judgment based on the first, second, and sixth causes of action in the Insurance Coverage Complaint.

13. On May 1, 2019, the day MER's opposition papers were due to Starr's motion for partial summary judgment, the Debtors filed the Chapter 11 petition in this matter.

14. On February 28, 2020, Debtors filed an Adversary Proceeding Complaint against Starr (Adv. Pro. No. 20-1141 (VFP)), seeking to avoid Starr's lien on the proceeds of the sale of the Seven Polaris and release to the Debtors' the $1,221,000 of the sale proceeds held by the Debtors on account of Starr's lien, and determining that Starr's proof of claim amounts to $0 and expunging Starr's claim.

15. April 30, 2020, the Debtors filed an Amended Complaint in the Adversary Proceeding [Adv. Pro. No. 20-1141 (VFP), Docket No. 13] asserting, *inter alia*, various causes of action against Starr that are the subject matter of the Insurance Coverage Litigation, for example:

- Declaratory Judgment (as to insurance coverage) (Amended Complaint, Count II, ¶¶ 176-178, pp. 23-24);
- Breach of Insurance Contract (*Id.*, Count IV, ¶¶ 188-119, p. 25);
- Sue-and-Labor and/or Quantum Meruit (*Id.*, Count V, ¶¶ 193-196, pp. 25-26);
- Breach of the Materials and Services Agreement (*Id.*, Count VI, ¶¶ 197-201, p. 26);
- Bad Faith (*Id.*, Count VIII, ¶¶ 223-231, pp. 29-30); and

- Breach of Duty of Good Faith and Fair Dealing (*Id.*, Count X, ¶¶ 236-240, pp. 30-31);

Starr also relies on, and incorporates by reference as if set forth fully herein, the facts set forth in: Starr's Brief in Opposition to Debtors' Objection to and Motion to Expunge Starr's Secured Claim, filed March 25, 2020 [Adv. Pro. 20-01141 (VFP), Docket No. 7], Starr's Brief in Support of Motion to Convert the Case to Chapter 7 or, Alternatively, Dismiss the Case and Order that the Funds Securing Starr's Lien Claim be Escrowed, filed April 27, 2020 [Case No, 19-18994 (VFP), Docket No. 334-1], and Starr's Counter-Statement of Undisputed Material Facts in Support of Starr's Opposition to Debtors' Motion and in Further Support of Starr's Cross-Motion for Relief From Stay, filed May 21, 2020.

## **LEGAL ARGUMENT**

### **STARR SHOULD BE GRANTED RELIEF FROM STAY FOR THE PARTIES TO CONTINUE THE INSURANCE COVERAGE LITIGATION.**

As set forth above, a central issue in this case is the valuation and determination on the merits of Starr's and the Debtors' claims against each other in order to determine whether MER will be rewarded any recovery against Starr and the value of Starr's claim against the Debtors. The existence of Starr's secured claim is inexorably intertwined with these issues.

Accordingly, if the case is not dismissed, Starr should be granted relief from the automatic stay for the parties to continue the Insurance Coverage Litigation. Discovery has been completed in that litigation and the parties were poised to argue the potentially dispositive summary judgment motion. None of the claims in that insurance coverage litigation involve bankruptcy law issues, and the case is near resolution by summary judgment or trial. Additionally, the policy at issue in that case contains a forum selection clause, further weighing toward litigating the matter in the SDNY forum.

Bankruptcy Code § 362(d)(1) permits a Court to modify the automatic stay for "cause." "Cause" is not defined in the Bankruptcy Code and must be determined on a case-by-case basis. *Clauson v. Mixson (In re Mixson)*, 33 F.3d 4, 5 (4th Cir. 1994); *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999).

"Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re The SCO Group Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). *See also Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (accord); *In re Schaffer*, 597 B.R. 777, 789 (Bankr. E.D. Pa. 2019) (accord).

Courts in the Third Circuit will typically grant stay relief with regard to primarily state law claims. *See In re Hollister Constr. Servs., LLC*, 2020 Bankr. LEXIS 677, *6 (Bankr. D.N.J. March 13, 2020) (Kaplan, J.) ("NWR then filed a motion . . . seeking relief from the automatic stay . . . The Court further determined that NWR could assert any and all of their non-monetary post-termination rights as set forth in the GMP Contract. As a result, NWR proceeded with its state law claims against the Debtor and removed the action to the District Court."). This policy is consistent with the "clear congressional policy of permitting state law claimants to have their claims hear in state court" where such claims are not a "core" proceeding in the bankruptcy court. *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 761 (D.N.J. 1996). *See also Best v. Galloway (In re Best)*, 417 B.R. 259, 272, n. 6 (Bankr. E.D. Pa. 2009) (*quoting In re Borchardt*, 56 B.R. 791, 794 (D. Minn. 1986) ("'When the bankruptcy court granted Farmers Bank relief from the automatic stay, that court essentially determined that the state law claim should more appropriately be brought in state court.'").

Courts in this Circuit have also held that, where a creditor seeks to liquidate its claim in order to determine its value for the bankruptcy proceedings, there is no basis for continuing the automatic stay as to such claims. *See*, *e.g.*, *In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D.N.J. 1988) ("Since the Movants only seek to litigate their claims and obtain proceeds through the Debtor's available insurance coverage and do not seek relief from the stay in order to attach the property of the Debtor, such relief does not interfere with the bankruptcy proceedings"); *In re 15375 Memorial Corp.*, 382 B.R. 652, 689 (Bankr. D. Del. 2008) ("Where, as here, the Plaintiffs have agreed that they will not seek any recovery from estate assets, there is no basis for continuing the automatic stay").

"Significantly, relief from the stay may be granted when it is necessary to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial." *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 130 (Bankr. D.N.J. 2004) (Steckroth, J.).

In *Maintainco*, Judge Steckroth noted:

> In determining whether to grant relief from the automatic stay so as to permit a party in interest to continue prosecuting a matter in another forum, courts will often rely upon the following factors: 1) **whether relief would result in a partial or complete resolution of the issues**; 2) **lack of any connection with or interference with the bankruptcy case**; 3) whether the other proceeding involves the debtor as a fiduciary; 4) **whether a specialized tribunal with the necessary expertise has been established to hear the cause of action**; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) **the interests of judicial economy and the expeditious and economical resolution of litigation**; 11) **whether the parties are ready for trial in the other proceeding**; and 12) impact of the stay on the parties and the balance of the harms. *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281

> B.R. 154, 165 (Bankr. D. Conn. 2002); *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (utilizing same factors). All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay. *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 165.

*Maintainco*, *supra*, 304 B.R. 111 at 130.

Here, granting relief from stay to allow the Insurance Coverage Litigation to continue would enable a speedy and efficient resolution of a central issue in case, i.e., the valuations of the claims of Starr and MER against one another. Granting relief from stay would allow a tribunal specialized in hearing such insurance and maritime laws issues, and which presided over the matter for over 15 months including full discovery, to determine the largely non-bankruptcy issues of fact and law that are involved in the Insurance Coverage Litigation. Further, granting relief from stay would afford judicial comity to the SDNY court in order to decide the issues which – after presiding over discovery for 15 months – it was poised to decide, potentially resolving the entire dispute. Moreover, stay relief will not delay the bankruptcy litigation and will actually preserve judicial resources – factor 10 of the *Maintainco* analysis – <u>by relieving the bankruptcy court from having to recreate the analysis and rulings that the SDNY should have been able to make</u>.

Further, the judge presiding over the Insurance Coverage Litigation, Judge Lorna Schofield, has extensive experience in presiding over and deciding insurance disputes. A Lexis search of cases involving insurance issues where Judge Schofield is the judge reveals scores, if not hundreds, of online opinions in which insurance issues were decided.

Further, the SDNY is recognized national forum for maritime law, also known as admiralty law, so much so, that the Local Rules of the SDNY contain an entire section entitled "Local Admiralty and Maritime Rules"

(*see* https://www.nysd.uscourts.gov/sites/default/files/local_rules/rules-2018-10-29.pdf), and the Court's website indicates that its District Judges and Magistrate Judges determine matters ranging from admiralty business, the backbone of the Court's work in early years …" (*see* https://www.nysd.uscourts.gov/judges).

Accordingly, if the case is not dismissed, Starr should be granted relief from the automatic stay for the parties to continue the Insurance Coverage Litigation in the SDNY.

## CONCLUSION

For the reasons set forth above, Starr Indemnity & Liability Company respectfully requests that the Court grant the Motion and allow Starr relief from stay for the parties to continue the Insurance Coverage Litigation pending in the United States District Court for Southern District of New York.

    Respectfully submitted,

    NICOLETTI HORNIG & SWEENEY

    - and -

    CONNELL FOLEY LLP

    *Attorneys for Starr Indemnity & Liability*

    By:   /s/ Robert Scheinbaum
         Philip W. Allogramento III
         Robert K. Scheinbaum
         Anthony P. D'Elia

Dated: May 21, 2020