| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| **DAY PITNEY LLP**<br>One Jefferson Road<br>Parsippany, New Jersey 07054-2891<br>(973) 966-6300<br>*Attorneys For Defendant*<br>Travelers Property Casualty Company of America | |
| In re:<br><br>MARINE ENVIRONMENTAL REMEDIATION GROUP LLC, et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 19-18994-VFP<br>(Jointly Administered)<br><br>Judge: Vincent F. Papalia, U.S.B.J. |
| Marine Environmental Remediation Group LLC and MER Group Puerto Rico LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>Starr Indemnity & Liability Company and Travelers Property Casualty Company of America,<br><br>Defendants. | Adv. Pro. No. 20-1141-VFP<br><br>Hearing Date: July 7, 2020 |

### MOTION OF TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS ADVERSARY PROCEEDING

Defendant Travelers Property Casualty Company of America ("Travelers"), by and through its undersigned counsel, files this motion to dismiss this adversary proceeding as against Travelers under the permissive abstention doctrine, or, in the alternative, to stay this action pending resolution of the insurance coverage dispute between Starr Indemnity & Liability Company ("Starr") and the Debtors Marine Environmental Remediation Group LLC and MER Group Puerto Rico LLC (collectively, "MER" or the "Debtors"). For the reasons set forth below,

- 1 -

105680279.11

the Court should abstain from hearing and should dismiss MER's claims against Travelers under the permissive abstention doctrine. Under that well-recognized doctrine, the United States District Court for the District of Puerto Rico should adjudicate MER's claims against Travelers. If the Court is not inclined to abstain, it should exercise its discretionary power to stay this action pending disposition of the Starr litigation because that action either will moot or dispose of the issues between Travelers and MER, or will substantially narrow the issues. Further, to the extent litigation proceeds against Travelers, that litigation should go forward in the original jurisdiction where MER sued Travelers, that is, the District of Puerto Rico, rather than in this Court.

## I.     PRELIMINARY STATEMENT

1.     This Adversary Proceeding relates to maritime insurance coverage disputes resulting from the sinking of the Debtors' vessel the Lone Star on April 30, 2017 and the costs expended to salvage that vessel.

2.     Before the Debtors filed for bankruptcy, Starr and MER had asserted claims against each other in the United States District Court for the Southern District of New York, in an action captioned *Starr Indemnity & Liability Company v. Marine Environmental Remediation Group, LLC*, Case No. 1:17-cv-09881 (LGS) (the "New York Action"). A few months after Starr filed the New York Action, the Debtors sued Travelers in the United States District Court for the District of Puerto Rico, in an action captioned *Marine Environmental Remediation Group, LLC v. Travelers Property Cas. Co. of America*, Case No. 3:18-cv-01179 (the "Puerto Rico Action").

3.     At the time of the bankruptcy filing, the New York Action was well advanced. The parties had completed discovery, and Starr had moved for partial summary judgment. The Debtors filed their bankruptcy petition on the same day that their opposition to that motion was due. The Puerto Rico Action, in the meantime, had been stayed to allow for the final disposition of the New York Action. Indeed, after receiving full briefing and over MER's objection, the

- 2 -

district court in the Puerto Rico Action had granted Travelers' motion for a stay on the grounds that a stay would promote judicial efficiency because the resolution of MER's dispute with Starr in the New York Action would either dispose of or substantially narrow the claims against Travelers, and because continuing with both actions would increase the risk of inconsistent judicial rulings.

4. In a clear effort to forum shop, the Debtors have restated their claims from the Puerto Rico Action as their claims against Travelers in this adversary proceeding. Under the circumstances, the Court should dismiss those claims under the permissive abstention doctrine. The well-recognized doctrine allows a court to decline jurisdiction in the interest of justice. The doctrine carries a non-exclusive twelve-factor analysis which, in this case, establishes that abstention is appropriate. This is particularly so because MER's claims do not involve a core proceeding and do not invoke bankruptcy law, Travelers (according to MER) is not a party in interest, and the critical issues have been litigated for years in other courts.

5. If the Court declines to dismiss the Amended Complaint against Travelers, it should stay the claims against Travelers in this adversary proceeding pending resolution of the Starr dispute. Starr has moved for relief from stay to permit continuation of the New York Action, in which the issues are ripe for possible summary judgment.

6. Travelers submits that, to the extent the Starr litigation does not fully resolve the issues with respect to Travelers, those issues should be resolved in the action where the dispute has been pending, namely the United States District Court for the District of Puerto Rico. Accordingly, Travelers is filing simultaneously herewith a motion for relief from stay to continue that litigation (*see* Case No. 19-18994-VFP at ECF No. 355).

**The Underlying Coverage Dispute**

7. In or around 2016, Travelers issued to MER a marine policy known as the Hull and Protection and Indemnity Policy Number No. ZOH-81M6730A-16-ND, for the policy period September 17, 2016 to September 17, 2017 (the "P&I Policy"). The Lone Star was an insured vessel under the P&I Policy, which insured among other things costs associated with wreck removal. The P&I Policy included as a special condition a warranty that the Lone Star be "in a seaworthy condition" at the inception of the policy and that MER thereafter "shall exercise due diligence to keep the vessel seaworthy." The P&I Policy provides that Travelers does not cover or contribute in the event MER is otherwise insured against the claimed loss.

8. In or around 2016, Travelers also issued to MER a marine policy known as Bumbershoot Policy No. ZOB-15T59501-16-ND, for the policy period September 17, 2016 to September 17, 2017 (the "Bumbershoot Policy" and, together with the P&I Policy, the "Travelers Policies"). A Bumbershoot policy is a specialized form of excess liability insurance often used in the maritime industry. The Bumbershoot Policy provided certain liability insurance for certain vessels in excess of the P&I Policy and the Starr Policy (as defined below), subject to requirements and limitations.

9. In or around 2016, Starr issued to MER the policy known as Pollution Policy No. MASILNY00047816, which provided certain pollution liability insurance for the Lone Star for the policy period June 30, 2016 to June 30, 2017 (the "Starr Policy").

10. On April 30, 2017, the Lone Star was discovered to have sunk, discharging approximately 1,800 gallons of waste oil. (*See* Starr's Complaint filed in the New York Action, which was filed on the docket in this case at ECF No. 7-2).

11. As a result of the sinking of the Lone Star, MER alleges that it was required to incur expenses pursuant to orders of the United States Coast Guard and the government of Puerto Rico

- 4 -

105680279.11

to remove the sunken barge. MER claimed it did not have the financial resources to undertake the required responses. (*See id.,* ¶¶ 14-20).

12. MER filed claims with both Starr and Travelers seeking coverage for the wreck removal under the Starr Policy and the Travelers Policies.

13. On August 11, 2017, Travelers sent a reservation of rights letter to MER, reaffirming its reservation of rights as to coverage under the Travelers Policies which had been communicated in an email dated June 30, 2017. The letter informed MER that it was performing an investigation into several issues that could impact coverage: (1) whether MER accurately represented the Lone Star risk at the time of the placement of insurance, including but not limited to whether MER accurately represented its means and ability to remove the vessel from the water; (2) whether the loss event was a fortuity, which is a condition precedent for coverage; and (3) whether MER complied with the seaworthiness warranty. It also identified various other bases to reserve rights under the Bumbershoot Policy, including that the Lone Star may not qualify as a vessel or watercraft under the policy, and that the policy does not cover liability for pollution that causes natural resource damage as was apparently being alleged by the Puerto Rico authorities.

14. Starr also disputed that it was obligated to provide coverage for the MER claim. Starr took the position that the Starr Policy did not require Starr to pay MER for covered expenses and liabilities that MER did not first pay itself. (*See* ECF No. 22-1 ¶ 6). While Starr conducted an investigation into MER's claim for coverage under the Starr Policy, Starr offered to pay certain expenses that would be incurred by MER, if MER were to post a bond to secure payment of Starr's outlays in the event the claim was ultimately denied following completion of the full investigation into the sinking of the Lone Star. (*Id.*).

15. According to Starr, MER did not dispute Starr's request for countersecurity and requested that, rather than MER posting a bond, Starr take a mortgage on MER's Seven Polaris

vessel as consideration for Starr making payment on the disputed claim for the Lone Star vessel. (*Id.* ¶ 7).

16. Starr also asserts that, subject to Starr's receipt of the ship mortgage suggested by MER, it issued a Letter of Undertaking to Resolve in which it: (i) guaranteed amounts due under a BIMCO wreckage contract executed by MER to recover and remove the sunken barge; (ii) agreed to make payments to MER for labor and equipment used in the wreck removal activities; and (iii) agreed to retain a dive contractor to perform an underwater survey required by the United States Coast Guard. (*See id.* ¶ 7, citing ECF No. 7-2 ¶¶ 14-21).

17. On September 12, 2017, Starr and MER entered into a First Preferred Ship Mortgage, whereby MER granted to Starr a mortgage on the Seven Polaris vessel in the amount of $3,000,000 (the "Ship Mortgage"). (*See id.* ¶9, citing ECF No. 7-4).

18. Following the recording and delivery of the Ship Mortgage, Starr advanced the sum of approximately $2,500,000 to pay for wreck removal, survey, and cleanup expenses associated with the sinking of the Lone Star. (*Id.* ¶ 10). Upon information and belief, Starr has paid <u>all</u> of the costs associated with the ordered remediation of the sunk Lone Star, which in turn are the same amounts that MER claims Travelers was obligated to pay under the Travelers Policies.

**Starr Files the New York Action in the SDNY in December 2017**

19. On December 18, 2017, Starr filed the Complaint in the New York Action, seeking a declaration that the Starr Policy was null and void *ab initio* or alternatively that there was no coverage for the costs to salvage the Lone Star. Starr asserted, among other things, that the Lone Star was unseaworthy at the time she sank and that her sinking was the result of such unseaworthiness, and that prior to the sinking of the Lone Star, MER did not exercise due diligence in maintaining the barge in seaworthy condition. (*See* ECF No. 7-2 ¶¶ 22-29 (First Cause of Action)).

20. Between December 2017 and April 2019, Starr and MER engaged in extensive and voluminous discovery, which culminated in the filing of a motion for partial summary judgment by Starr on April 3, 2019, seeking judgment as a matter of law on its First, Second, and Third Causes of Action. (*See* ECF No. 22-1 ¶ 12).

21. MER's opposition to Starr's motion for partial summary judgment was due on May 1, 2019. When its May 1 deadline arrived, rather than file opposition papers in the New York Action, MER filed its Chapter 11 petition. (*See* Case No. 19-18994-VFP at ECF No. 1).

22. The New York Action has been stayed as a result of MER filing its Chapter 11 bankruptcy petition.

**MER Files Suit Against Travelers in the District of Puerto Rico in March 2018, Which Has Since Been Stayed and Administratively Closed Pending Resolution of the New York Action**

23. On March 29, 2018 (about 3 months after Starr filed the New York Action), MER filed its Complaint against Travelers in Puerto Rico. MER thereafter filed an Amended Complaint on September 14, 2018. (*See* June 5, 2020 Certification of Stephen R. Catanzaro ("Catanzaro Cert.") Ex. A).

24. MER asserted claims in the Puerto Rico Action almost identical to those it asserts against Travelers in this adversary proceeding, including seeking a declaratory judgment that Travelers is obligated to pay all of the costs incurred and paid by MER in connection with the wreck of the Lone Star (despite those costs having already been advanced by Starr), and claims for breach of contract and bad faith (*compare* ECF No. 13 with Catanzaro Cert. Ex. A).

25. On December 17, 2018, Travelers filed a motion to stay the proceedings in the Puerto Rico Action pending resolution of the New York Action (the "Puerto Rico Stay Motion"). (*See* Catanzaro Cert. Ex. B). Travelers pointed out that Starr had paid the costs associated with the Lone Star remediation, which was precisely the damages that MER sought from Travelers in the

Puerto Rico Action (and in this action). (*Id.* Ex. B at 4). Travelers argued that the resources of the parties and the Court were best conserved by staying the case, and that the parties' interests would not be served by incurring the costs, time and expense of further fact discovery and expert discovery when the New York Action could resolve all of the issues raised in the Puerto Rico Action. (*Id.*). Travelers further argued that a stay would ensure that there are no inconsistent procedural and legal rulings, particularly given that the two cases involved the sinking of the Lone Star vessel and had overlapping issues in dispute, including the condition/seaworthiness of the Lone Star. (*Id.*).

26. On January 8, 2019, MER filed papers in opposition to the Puerto Rico Stay Motion. (*See* Catanzaro Cert. Ex. C). In its opposition, MER attempted to distinguish the Puerto Rico Action from the New York Action, arguing that MER's claims against Traveler are broader than those against Starr, and that the damages sought from Travelers are different from those sought from Starr. (*Id.*, Ex. C at 2-4).

27. On January 10, 2019, Travelers filed reply papers in further support of the Puerto Rico Stay Motion. (*See* Catanzaro Cert. Ex. D).

28. On January 15, 2019, MER filed a sur-reply in further support of its opposition to the Puerto Rico Stay Motion. (*See* Catanzaro Cert. Ex. E). In these papers, MER argued that the issue of coverage under the Travelers' Policies could only be decided in the Puerto Rico Action, and that the damages differed in the two cases. (*Id.* Ex. E at 3-5).

29. On February 8, 2019, the Hon. Pedro A. Delgado-Hernandez, U.S.D.J. entered an Order granting the Puerto Rico Stay Motion, staying and administratively closing the Puerto Rico Action. (*See* Catanzaro Cert. Ex. F at ECF No. 44). The Order provides that the case can be reopened by either party upon conclusion of the New York Action. (*Id.*).

**MER Filed the Amended Complaint in May 2020, Seeking to Litigate Claims That the Court in the Puerto Rico Action Already Ruled Should Wait Until Conclusion of the New York Action**

30. On February 28, 2020, MER filed its Adversary Complaint in this action, asserting various claims against Starr. (*See* ECF No. 1)

31. On April 30, 2020, MER filed the Amended Complaint, adding Travelers as a defendant and asserting various claims against Travelers related to the Travelers Insurance Policies. (*See* ECF No. 13). As noted above, MER's claims against Travelers in this action are almost identical to those it asserted in the Puerto Rico Action. Specifically, MER asserts causes of action for declaratory judgment (Count I), breach of insurance contract (Count III), bad faith (Count VII), and breach of duty of good faith and fair dealing (Count IX). (*Id.*). As discussed in detail above, the Puerto Rico District Court ordered the Puerto Rico Action stayed pending disposition of the New York Action.

32. None of the Debtors' claims against Travelers are "core" claims within the meaning of 28 U.S.C. § 157. Travelers has not filed a proof of claim in either of the Debtors' bankruptcy cases.

33. On May 21, 2020, Starr filed a cross-motion for relief from the automatic stay to allow the parties to continue the New York Action. (*See* ECF No. 22).

34. Simultaneously herewith, Travelers is filing a motion for relief from the automatic stay in order to continue litigation in Puerto Rico (*see* Case No. 19-18994-VFP at ECF No. 355). In the event the Court concludes that MER's claims against Travelers should not be dismissed or stayed and should proceed notwithstanding the pendency of the Starr litigation, Travelers submits that the litigation should proceed in Puerto Rico rather than in this Court.

## II.   ARGUMENT

### A.   THIS ACTION SHOULD BE DISMISSED UNDER THE PERMISSIVE ABSTENTION DOCTRINE

35. 28 U.S.C. § 1334(c)(1) provides that a district court can abstain from hearing a proceeding arising in or related to a case under Chapter 11 in the "interest of justice."

36. Bankruptcy courts within the Third Circuit have routinely invoked the "interest of justice" provision of 28 U.S.C. § 1334(c)(1) to abstain from hearing an adversary proceeding, deferring the asserted claims to other state courts, district courts, and administrative boards. (*See, e.g. McMahon Books, Inc. v. New Castle Assocs.,* 173 B.R. 868 (Bankr. D. Del. 1996) (abstaining from exercising jurisdiction over claims that belonged before the district court, holding that abstention is not limited to state court proceedings and that the court "may decline to exercise jurisdiction in the interests of justice").

37. To determine whether permissive abstention is appropriate, courts consider twelve nonexclusive factors: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12)

the presence in the proceeding of nondebtor parties. *In re Loewen Group Intern., Inc.*, 344 B.R. 727, 729-30 (Bankr. D. Del. 2006). "Evaluating the twelve factors is not a mathematical formula." *Id.* at 730 (quotation omitted) (noting that some factors, such as the fact that resolution of the adversary proceeding would not impact the administration of the estate, are more substantive and weigh in favor of abstention).

38. Application of the factors to this Adversary Proceeding demonstrate that permissive abstention is appropriate, and that this Court should dismiss this action.

39. Factor #1: Travelers has not filed a proof of claim or otherwise sought any other relief or recovery from Debtors' estate. It is purely speculative that the claim against Travelers could have any impact on the estate. If coverage is found under the Starr Policy, then Starr's secured claim will be expunged and the Debtors will not be out of pocket, as they did not pay the cost of salvage. Similarly, to the extent Starr has defenses to coverage, those same defenses are likely to preclude coverage by Travelers. Finally, while MER asserts that it has additional claims against Travelers for alleged bad faith, we respectfully submit that such claims are frivolous and any damages purely speculative given that the costs of salvage already have been paid for. This factor weighs in favor of abstention.

40. Factor #2: MER's claims against Travelers are straightforward insurance coverage claims that do not raise any bankruptcy law issues. This factor weighs in favor of abstention.

41. Factor #3: The Debtors' bad faith claim against Travelers (Count VII) does not specifically refer to the law that they claim applies, but in the Puerto Rico Action they asserted a claim for bad faith ("dolo") as set forth in P.R. Laws Ann. tit. § 3018. Travelers disputes that Puerto Rico (or other state law) applies, and contends that under settled law the policy is governed by federal admiralty law. Because of the need to address this dispute, this factor weighs in favor of abstention.

42. Factor #4: The claims raised by MER in this adversary proceeding are the subject of litigation in other, non-bankruptcy courts. As explained in detail above, the New York Action has been pending for more than two years. In that action, Starr has moved for summary judgment on issues that could dispose of or greatly narrow MER's claims against Travelers, including whether the Lone Star was seaworthy. MER also filed suit against Travelers in the Puerto Rico Action more than two years ago, asserting the same claims as those in Amended Complaint. That case has been stayed pending disposition of the New York Action, but MER is authorized to reopen its claims against Travelers in the event that the New York Action does not resolve all relevant issues. Therefore, an extensive non-bankruptcy procedural history has predated MER's claims in this action. This factor weighs in favor of abstention.

43. Factor #5: MER's sole basis for jurisdiction in this Court is "related to" jurisdiction under 28 U.S.C. § 1334(b). (*See* ECF No. 16 at ¶6). The Amended Complaint does not identify any other basis. This factor weighs in favor of abstention.

44. Factor #6: This adversary proceeding relates to the bankruptcy case only in the sense that the plaintiffs are the Debtors and if they prevail against Travelers, but not against Starr, there may be some recovery to the estate. That fact alone is not sufficient to support the exercise of jurisdiction, given the many factors weighing against the exercise of jurisdiction.

45. Factor #7: This is not a core proceeding under 28 U.S.C. § 157. Therefore, this factor weighs in favor of abstention.

46. Factor #8: Since there are no bankruptcy issues to be decided as to Travelers, there are no non-bankruptcy claims to be severed. This factor weighs in favor of abstention.

47. Factor #9: Travelers defers to this Court's judgment as to what burden this case would impose upon its docket.

- 12 -

48.     Factor #10: MER has engaged in forum shopping by filing a new action in this Court after it earlier filed an action asserting the same claims against Travelers in Puerto Rico, but received an unfavorable ruling staying that action pending resolution of the New York Action. Moreover, MER has elected not to continue the New York Action, where discovery had been completed and a dispositive ruling was imminent, so that any delay in resolution of the dispute with Travelers is a consequence of its own strategic decisions. This factor weighs in favor of abstention.

49.     Factor #11: MER has not asserted a jury demand in this action.

50.     Factor #12: Starr is the only other non-debtor party in this adversary proceeding, and MER's claims against Starr are already the subject of the New York Action. Thus, this factor weighs in favor of abstention.

51.     Collectively, the factors overwhelmingly weigh in favor of permissible abstention.

52.     Based on the foregoing, this Court should abstain from hearing and should dismiss this adversary proceeding as to Travelers.[1]

### B. IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION PENDING DISPOSITION OF THE CLAIMS BETWEEN THE DEBTORS AND STARR

53.     Alternatively, if the Court does not abstain and dismiss this action against Travelers, the Court nonetheless should stay the claims against Travelers pending disposition of the dispute between the Debtors and Starr. A court has the inherent power to control its docket, including broad discretion to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). To be sure, "the power to stay proceedings is incidental to the power inherent in every court to control the

---

[1] Notably, dismissal of MER's claims against Travelers does not leave MER without an opportunity to have its claims against Travelers heard. To the contrary, those claims belong before the District Court in the Puerto Rico Action, where MER originally filed its action. As noted above, the District Court in that case determined that the significant overlap in issues with the New York Action warranted a pause in litigation of MER's claims against

- 13 -

105680279.11

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.*; *see also Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action.") (quotation omitted).

54.     Here, the Debtors and Starr had completed discovery in the New York Action, and the principal issues were ripe for decision on summary judgment. Consistent with the District Court's findings in the Puerto Rico Action in connection with the Puerto Rico Stay Motion, it would be a waste of judicial resources and the parties' time and money to litigate the Debtors' claims against Travelers prior to a resolution of the dispute between the Debtors and Starr because a resolution of the dispute between the Debtors and Starr could render the claims against Travelers in this adversary proceeding moot, or otherwise could limit the claims to be litigated. For example, if the Debtors prevail on their claim that the Lone Star salvage costs were covered under the Starr Policy, then the Debtors will have recovered the full amount of their claim and would have no damages. And, under the Travelers Policies, MER is not entitled to recovery against Travelers if another policy is in place and covers the loss. On the other hand, if Starr prevails on its claim that the Lone Star was not seaworthy (a condition precedent under the Starr Policy and under the Travelers Policies), that would render Starr's claim for coverage under the Travelers Policies fatal. Simply stated, the resolution of the dispute between the Debtors and Starr, whether in this Court or in the New York Action, will, at a minimum, narrow or frame the Debtors' claims against Travelers, with the potential of resolving the entire dispute.

---

Travelers pending disposition of the New York Action. MER is permitted to seek to reopen that case in the event that the New York Action does not resolve all of MER's claims against Travelers.

55. The District Court in the Puerto Rico Action granted Travelers' Puerto Rico Stay Motion, at a time when discovery in that action was well advanced but not completed. After the court granted the stay, the parties in the New York Action completed discovery and Starr filed a dispositive motion. Given that procedural posture, the grounds for a stay now are all the stronger.

56. The most efficient path forward is to allow the New York Action to proceed because the District Court has spent substantial judicial resources presiding over discovery, and the parties have incurred significant attorneys' fees and costs litigating the case through the completion of discovery and the filing of a dispositive motion. Those efforts and costs would be unnecessarily duplicated by litigating the claims against Travelers before the New York Action is concluded. Moreover, as Travelers noted in the Puerto Rico Stay Motion, staying the claims against Travelers would avoid the risk of inconsistent procedural and legal rulings inherent in parallel litigation.

57. Lastly, MER brought its claims against Travelers in this Court in a transparent attempt to forum shop and circumvent the District Court's stay order in the Puerto Rico Action. MER waited until its May 1, 2019 deadline to oppose summary judgment in the New York Action to file its Chapter 11 petition. MER then waited another year before filing its Amended Complaint against Travelers, raising claims nearly identical to those it asserted in the Puerto Rico Action. MER's actions bespeak its fear that the District Court in the New York Action was poised to decide on summary judgment issues that could render its claims for coverage against both Starr and Travelers as meritless. Thus, MER's filing of the Amended Complaint is a clear effort to reset both the New York Action and the Puerto Rico Action, effectively asking this Court to wipe its litigation slate clean and ignore that MER's claims have already been litigated for years in other, more appropriate forums. The Court should reject such a maneuver.

58.     Therefore, if this Court declines to abstain from hearing the claims against Travelers and to dismiss the adversary proceeding against Travelers, it should exercise its discretionary power to stay the claims against Travelers pending disposition of the dispute between the Debtors and Starr.

### C.  IF THE COURT DECIDES MER'S CLAIMS AGAINST TRAVELERS SHOULD GO FORWARD, THOSE CLAIMS SHOULD BE LITIGATED IN THE PUERTO RICO ACTION

59.     To the extent that resolution of the Starr-MER dispute does not resolve all issues, or to the extent the Court concludes that that abstention is not appropriate and that the litigation between the Debtors and Travelers should go forward, the Debtors' claim against Travelers in this Adversary Proceeding nonetheless should be stayed in favor of the parties continuing the Puerto Rico Action.  That is the jurisdiction in which the relevant events occurred and where the Debtors elected to commence suit against Travelers.

60.     Puerto Rico is the appropriate forum for MER's claims against Travelers.  The claims will be governed either by admiralty law (as Travelers contends) or by Puerto Rico law (as MER contends).  In either event, the District Court in Puerto Rico is well suited to determine the dispute given its prior knowledge of the case.  That is particularly so because the dispute has no bankruptcy components so that this Court's expertise would not be relevant; and ultimately this Court would not have authority to render a final judgment with respect to the Debtors' claims against Travelers.  *See Stern v. Marshall,* 564 U.S. 462 (2011).  As a result, even if the Court believes MER's claims should proceed against Travelers, without the prospect of a final judgment, litigating those claims in this Court would be a waste of judicial resources and an unnecessary expenditure of time and money by the parties, as a district court still will need to pass on the Debtors' claims before a final judgment can enter.

- 16 -

105680279.11

61. Therefore, in the event this Court decides that MER's claims against Travelers should proceed notwithstanding the pendency of the Starr dispute, Travelers respectfully requests that the Court stay this adversary proceeding and grant Travelers relief from the automatic stay so that it can seek leave to reopen the Puerto Rico Action, which is the appropriate forum for adjudication of MER's claims.

**CONCLUSION**

Based on the foregoing reasons, Travelers respectfully requests that the Court dismiss this action under the doctrine of permissive abstention. Alternatively, the Court should stay this action pending disposition of the dispute between the Debtors and Starr or, if it concludes that the litigation should proceed, it stay the Debtors' claims against Travelers in favor of the pending Puerto Rico Action and concurrently grant Travelers relief from the automatic stay so that it can seek leave to reopen the Puerto Rico Action.

Date: June 9, 2020

*/s/ Stephen R. Catanzaro*
Stephen R. Catanzaro, Esq.
Thomas D. Goldberg, Esq.
Joshua W. Cohen, Esq.
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054
scatanzaro@daypitney.com
jwcohen@daypitney.com
(973) 966-6300

Rachel R. Hager, Esq.
Finazzo Cossolini O'Leary
 Meola & Hager, LLC
67 East Park Place, Suite 901
Morristown, NJ 07960
rachel.hager@finazzolaw.com
(973) 343-4960

Christopher Abel, Esq.
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, VA 23510
cabel@wilsav.com
(757) 628-5547

*Attorneys For Defendant*
Travelers Property Casualty Company of America

- 18 -

105680279.11