# EXHIBIT D

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARINE ENVIRONMENTAL REMEDIATION GROUP LLC and MER GROUP PUERTO RICO LLC<br>    Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA<br>    Defendants | Civil Case No.: 18-cv-1179 (PAD)<br><br>Re:  Insurance Claim |

## MOTION IN REPLY TO PLAINTIFFS OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDING

**TO THE HONORABLE COURT:**

Defendant, Travelers Property Casualty Company of America, through its undersigned attorneys, very respectfully, states and prays as follows:

MER's Opposition concedes that it claims against Travelers for removal of the Barge LONE STAR, and that MER's pollution insurer Starr Indemnity & Liability Co. ("Starr") paid at least $2.6 million to remove the LONE STAR. [*See,* MER's Opposition, Dkt. No. 34 at pages 2 and 4.]  Despite seemingly recognizing that its admissions merit a stay of this proceeding, MER attempts to obfuscate.  The actual factual record confirms the significant factual and legal overlap of the two cases, and the appropriateness of a stay.

In this regard, on July 7, 2017, the U.S. Coast Guard issued Administrative Order No. 007-17 to MER.  The July 7 Order provided in part:

> Pursuant to 33 U.S.C. § 1251-1376 (c), 33 U.S.C. § § 1251-1376 (e)(1)(B), 33 C.F.R. § 1.01-80, and 40 C.F.R. 300.130 (d), I have determined that there may be <u>an imminent and substantial threat to the environment because of an actual and continued discharge of oil from the LONE STAR</u>.

[*See*, Exhibit 7, July 7 Order, p. 1 (emphasis added).]

On July 21, 2017, in response to the July 7 Order, MER submitted Resolve Marine Group, Inc./Resolve Salvage and Fire ("Resolve")'s proposal to raise the LONE STAR, writing "[a]s per your Administrative Order 007-17, issued on July 7, 2017 MER is submitting the plan for removal of the threat caused by the sunken Lone Star barge." [See, Exhibit 8, MER July 21, 2017 Letter with Resolve Plan.]

On August 14, 2017, the U.S. Coast Guard issued an Amendment to its Administrative Order, ordering MER to raise the LONE STAR pursuant to the Resolve Plan to address the threat to the environment:

> For these reasons, and under the authority referred to above, you are hereby ordered to undertake the following actions:
>
> 1.   Within (10) days from the date of this amendment, provide documentation to this office of MER Group Puerto Rico entering into a contract with a third party company capable of carrying out the scope of work identified in the previously submitted and amended plan.
>
> \*     \*     \*
>
> Within (21) days from the date of this amendment, have contracted resources on-scene which are capable of removing the substantial threat to the environment posed by the Lone Star, to the satisfaction of my office and associated trustees.

[See, Exhibit 9, August 14, 2017 Amendment to Administrative Order.]

Thereafter, MER entered into a contract with Resolve to raise and scrap the LONE STAR. [See, Wreckstage Agreement included as Exhibit 10.]  Pursuant to the Agreement, Resolve was to be paid the full $2,080,000 lump sum contract price when "final piece of vessel delivered ashore and debris removal completed." [See, Exhibit 10, Wreckstage Agreement, p. MER 491 at Box 9 (i) and (v).]

Notably, the Wreckstage Agreement repeatedly confirms that Resolve's services addressed the U.S. Coast Guard's Admistrative Order regarding the pollution threat, and is subject to U.S.

2

Case 2:14-cv-01793-SRC   Document 35   Filed 06/09/17   Page 21 of 64   Desc
Case 3:18-cv-01793-AD   Doc 94-6   Filed 06/09/23   Entered 06/09/23 17:21:04   Desc
Exhibit D to Certification    Page 4 of 7

Coast Guard oversight. [*See,* Exhibit 10, Wreckstage Agreement at p. MER 489, Box 4 (x) ("subject to review and approval by the Federal On-Scene Coordinator (FOSC) and related Incident Command…"), MER 491, Box 7 (i) ("Vessel removal plans shall be approved by…the FOSC"), MER 494, and MER 495".]

Starr, as MER's pollution insurer, guaranteed payment of MER's contract with Resolve in the full $2,080,000 amount. [*See,* Exhibit 11, Starr Guarantee.]

It is undisputed that Starr paid the full $2,080,000, confirming that, pursuant to the Wreckstage Agreement, "the final piece of [the LONE STAR was] delivered ashore and debris removal completed." [*See,* Dkt. No.*t 32-2*, Starr/MER February 27, 2017 Joint Report, p. 4 and Exhibit 10, Wreckstage Agreement, p. MER 491 at Box 9 (i) and (v).] Once Resolve delivered the LONE STAR ashore and debris removal completed, there was nothing left to "remove."

Thus, despite MER's suggestions and misstatements, Starr undeniably paid to remove the LONE STAR, the very damages MER seeks from Travelers.

MER's reference to "MER Direct Expenses" is similarly misleading. MER contracted directly with Starr to provide services related to the removal of the LONE STAR. The Agreement between MER and Starr is Exhibit 12. The Agreement recites, in detail, that Starr, as MER's pollution insurer, agreed to pay MER for assisting Resolve to raise and scrap the LONE STAR in response to the U.S. Coast Guard Administrative Order. [*See,* Exhibit 12, Starr/MER Agreement, page MER bates stamp 33-34.]

MER's reference to additional damages is also, at best, misleading. Although the policy coverages are distinct, the actual costs and expenses incurred in raising and scrapping the LONE STAR (the "removal" claimed under the Travelers' policy) were paid by Starr. The open questions regarding MER's remaining damages, the vast majority of which appear to be attorneys' fees and/or pollution related expenses not covered under the Travelers' policy, could be clarified if

3

DM1\9287381.1

MER produced its representatives for deposition — which it steadfastly refuses to do. [*See,* Dkt. No. 35, Travelers' Motion to Compel.]

MER further argues that there is no potential for inconsistent procedural and legal rulings, but conveniently ignores the direct overlap in disputed issues. Most blatantly, both Starr and Travelers maintain that the LONE STAR was not seaworthy, voiding coverage for the claim. [*See,* Dkt. No. 32-1, Starr Complaint, at pages 6-8 and Dkt. No. 29, Travelers' Answer and Counterclaim at p. 12 and 13 of 15.] Both Starr and Travelers also claim that MER violated its Duty of Utmost Good Faith, or *Uberrimae Fidei Strictissimi*, when it did not fully and accurately disclose MER's operations when seeking insurance. [*See,* Dkt. No. 32-1, Starr Complaint at p. 8 and Dkt. No. 29, Travelers' Answer and Counterclaim at page 12 of 15.] And, MER's coverage with Starr is "other insurance" which precludes or limits coverage under the Travelers Policy. [*See* Dkt. No. 29, Travelers' Answer and Counterclaim at page 10 and 14 of 15.] The overlap of issues, and potential for inconsistent judgments, is manifest.

MER's suggestion that different law will apply is flatly wrong. The Southern District of New York expressly ruled that the Starr policy is a marine insurance contract. [*See,* Exhibit 13, July 27, 2018 Order]. There is no question that Travelers' Protection & Indemnity Policy is a marine insurance policy. *Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Servs.*, 778 F.3d 69, 77-80 (1st Cir. 2015). Under settled Supreme Court, First and Second Circuit law, the interpretation of both the Starr and Travelers policies are governed by established Federal Admiralty Law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313-14 (1955); *Commercial Union v. Pesante,* 459 F.3d 34, 37 (1st Cir. 2006); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 822 F.3d 620, 632 (2nd Cir. 2016); *Commercial Union Ins. Co. v. Flagship Marine Services,* 190 F.3d 26, 30 (2nd Cir. 1999).

4

Case 20-01143-FPC-01 Doc 34-6 Filed 06/09/23 Entered 06/09/20 17:21:04 Desc
Case 3:18-cv-01793-ADC Document 38 Filed 01/09/19 Page 6 of 7
Exhibit D to Certification    Page 6 of 7

MER's misstatements regarding discovery are addressed in Travelers' pending Motion to Compel. [*See*, Dkt. No. 35, Motion to Compel. Most egregious is MER's unexplained refusal to produce most of the documents exchanged, deposition transcripts and expert materials from the *Starr* lawsuit.

The actual facts prove that a stay should be granted to conserve party and judicial resources, and to avoid inconsistent procedural and legal rulings. Alternatively, the current deadlines be extended to permit the orderly completion of discovery after discovery is completed in the Starr case to avoid duplication, unnecessary costs and expenses.

**WHEREFORE**, the appearing party respectfully requests that this Honorable Court deny MER's Motion in Opposition, consequently grants Travelers' Motion to Stay Proceedings at Dkt. No. 32.

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will notify a copy of the same to all attorneys of record.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico on this 9th day of January 2019.

By:    s/ Jorge F. Blasini
**JORGE F. BLASINI**
USDC-PR NO.: 213001
**JIMÉNEZ, GRAFFAM & LAUSELL**
P.O. BOX 366104
SAN JUAN, P. R. 00936-6104
TEL.: (787) 767-1030
FAX: (787) 751-4068
jblasini@jgl.com

-and-

5

        James W. Carbin (admitted *pro hac vice*)
        P. Ryan McElduff (admitted *pro hac vice*)
        DUANE MORRIS, LLP
        ONE RIVERFRONT PLAZA,
        1037 RAYMOND BLVD., SUITE 1800
        NEWARK, NEW JERSEY 07102
        TEL: (973) 424-2000
        FAX: (973) 424-2001
        JWCarbin@duanemorris.com
        PRMcElduff@duanemorris.com

        ATTORNEYS FOR DEFENDANT, Travelers
        Property Casualty Company of America