# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| FORMAN HOLT<br>365 West Passaic Street, Suite 400<br>Rochelle Park, NJ 07662<br>(201) 845-1000<br>Attorneys for Charles M. Forman, Chapter 7 Trustee<br>Erin J. Kennedy, Esq.<br>ekennedy@formanlaw.com | |
| In Re:<br><br>MARINE ENVIRONMENTAL REMEDIATION GROUP LLC, et al.<br><br>　　　　　　　　　　　　Debtors. | Chapter: 7<br>Joint Administration<br><br>Case No.: 19-18994 (VFP)<br><br>Judge: Hon. Vincent F. Papalia |
| MARINE ENVIRONMENTAL REMEDIATION GROUP LLC, et al.,<br>　　　　　　　　　　　　Plaintiffs,<br>vs.<br><br>STARR INDEMNITY & LIABILITY COMPANY, et al.,<br>　　　　　　　　　　　　Defendants. | Adv. Pro. No. 20-1141 (VFP) |

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE ("Settlement Agreement") is executed on the one hand by Charles M. Forman, in his capacity as the chapter 7 trustee ("Trustee") for the estates of Marine Environmental Remediation Group, LLC ("Marine") and MER Group Puerto Rico LLC ("MER" and, together with Marine, the "Debtors"), and on the other hand by Starr Indemnity & Liability Company ("Starr")(Starr and the Trustee are collectively referred to as the "Parties").

## RECITALS

A. On May 1, 2019 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 101 *et seq.* ("Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey ("Court").

F0116314 - 1

B. On May 21, 2019, an order was entered providing for the joint administration of the Debtors' cases.

C. On August 6, 2020, the Debtors' cases were converted from Chapter 11 cases to Chapter 7 cases.

D. On August 7, 2020, Charles M. Forman ("Trustee") was appointed to serve as the chapter 7 Trustee in the Debtors' chapter 7 cases.

E. Starr is the underwriter of Policy No. MASILYNY0047816 (the "Pollution Policy") that was issued to Marine providing certain pollution liability coverage for the vessel Lone Star, subject to the policy's terms and conditions, with a policy period from June 30, 2016, 12:01 a.m. to June 30, 2017, 12:01 a.m. The Pollution Policy named the Debtors as insureds.

F. Between April 29, 2017 and April 30, 2017, a vessel owned by Marine, the Lone Star, sank at the Debtors' facility located in Puerto Rico referred to as Roosevelt Roads.

G. At the time that the Lone Star vessel sank, the Lone Star was insured by Starr under the Pollution Policy.

H. The Debtors submitted a claim to Starr seeking coverage under the Pollution Policy for pollution mitigation and wreck removal related to the sinking of the Lone Star (the "Loss"; Claim No. SMSIL0431358).

I. The Government of Puerto Rico, Department of Natural and Environmental Resources and the United States Coast Guard, among others, issued Orders requiring MER to remove the Lone Star wreck.

J. Starr agreed to incur and pay the expenses necessary for the Debtors to comply with the Orders issued subject to a full reservation of rights; and conditioned upon receipt of a preferred ship mortgage in the crane vessel Seven Polaris for all costs and expenses incurred by Starr should there ultimately be no coverage under the Policy.

K. Starr incurred and paid $2,485,358.97 in expenses on behalf of the Debtors subject to the aforementioned reservation of rights and preferred ship mortgage.

L. After a full investigation, Starr declined the Debtor's claim related to the sinking of the Lone Star; and demanded a full reimbursement of the amounts incurred and paid by Starr.

M. A coverage dispute relating to the Starr's declination is the subject of litigation pending in the United States District Court, Southern District of New York that is currently stayed due to the Debtors' bankruptcy filing (Docket No. 17 civ. 09881)(the "SDNY Litigation").

N. On September 16, 2019, Starr filed a proof of claim in the Marine bankruptcy case seeking a total claim of $2,541,694.63 that was assigned Claim No. 10 (the "Proof of Claim"), of

which it is asserted by Starr that $1,224,000.00 of the total claim is a secured claim against money held by the Trustee from the sale of the Seven Polaris ship.

    O. On April 30, 2020, the Debtors filed an Amended Complaint against Starr and Travelers Property Casualty Company of America in the United States Bankruptcy Court of District of New Jersey (Adv. Pro. No. 20-01141) (the "Adversary Proceeding") (collectively with the SDNY Litigation, the "Litigations") to recover damages related to the sinking of the Lone Star and related relief.

    P. The Parties desire to resolve and settle all claims raised, or that could have been raised, between them in the Litigations and to resolve and settle all aspects of the Proof of Claim on the terms and conditions set forth herein.

### AGREEMENT

For good and valuable consideration, the receipt of which the parties acknowledge, the Parties stipulate and agree that:

    1.    All of the above Recitals are incorporated herein and made a part of this Settlement Agreement.

    2.    The Trustee agrees to turn over to Starr $793,500.00 of the $1,221,000.00 being held in escrow (the "Settlement Payment") from the sale of the Seven Polaris during the Chapter 11 case. Upon turnover of the Settlement Payment to Starr, the remaining balance of $427,500.00 shall be deemed property of the estate free and clear of Starr's claims.

    3.    In consideration of the settlement, upon payment of the Settlement Payment Starr agrees to waive all claims against the estates, including the Proof of Claim.

    4.    The settlement must be concluded with payment received by Starr no later than December 18, 2020.

    5.    This Settlement Agreement is subject to and conditioned upon the approval by the Court. In the event this Settlement Agreement is not approved, the parties shall be restored to their respective rights and remedies as if the Settlement Agreement had not been executed.

    6.    Upon the Trustee's receipt of the executed Settlement Agreement, the Trustee promptly will file pleadings with the Court seeking approval of the Parties' settlement. The Trustee will pay the Settlement Payment to Starr once the Bankruptcy Court enters and order approving this settlement.

    7.    Upon approval of this Settlement Agreement by the Bankruptcy Court, the Parties each release, acquit, and forever discharge each other, from any and all past, present, or future claims that they ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever, whether known or unknown, directly or indirectly arising out of, in connection with, or relating to in any way, in whole or in part, any obligation or asserted obligation with respect to, alleged in, or arising from the Litigations, the Claim, the Pollution

Policy, or these consolidated bankruptcy cases, except that the foregoing release does not apply to any party's obligations pursuant to this Settlement Agreement. This release is limited to the Trustee's capacity as Trustee for the estates of the Debtors in the Debtors' cases and applies to all causes of action and potential causes of action that were asserted or that could have been asserted against Starr by the Debtors in the Litigations.

8. Upon the Court's entry of an order approving this Settlement Agreement, Starr and the Trustee will cooperate to file voluntary dismissals of the Debtors' claims against Starr and Starr's claims against the Debtor asserted in the Litigations and the Debtors' cases.

9. The Trustee and Starr represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of the Settlement Agreement.

10. It is agreed and understood that neither the aforesaid Settlement Payment, nor the negotiation, execution, or performance of this Settlement Agreement shall be deemed to be, or used as, an admission of liability or responsibility on the part of any party hereto.

11. This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which are deemed and original, but all of which together constitute one and the same instrument.

12. This Settlement Agreement shall be construed and interpreted in accordance with New Jersey law, without regard to the principals relating to conflicts of law.

13. The Settlement Agreement may not be amended unless by a writing signed by all parties. The Settlement Agreement is an integrated agreement and contains the entire agreement among the parties regarding the matters set forth and each of the parties acknowledges that the Settlement Agreement controls over the parties' prior discussions and negotiations.

14. Except as expressly set forth herein, no party has relied on any representation or warranty made by another party in entering into this Settlement Agreement.

15. The parties acknowledge and agree that the court shall have jurisdiction over the parties and the subject matter hereof to resolve all disputes arising under this Settlement Agreement.

16. Each party shall bear their own costs and attorneys' fees in connection with the negotiation and preparation of this Settlement Agreement and any proceedings before the court to finalize approval of this Settlement Agreement.

WHEREFORE, the parties execute the Settlement Agreement as of the 18th day of November, 2020.

_____
CHARLES M. FORMAN, solely in his capacity as the chapter 7 trustee for the estates of Marine Environmental Remediation Group, LLC and MER Group Puerto Rico LLC


STARR INDEMNITY & LIABILITY COMPANY

By: _____
    Dave Fitzgerald
Title: Global Chief Claims Officer

19 November 2020